IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

**FILED**

APR 1 8 2006

RALPH L. DeLOACH, CLERK

By _____ Deputy

UNITED STATES OF AMERICA, )
)
                    Plaintiff,        )    **CRIMINAL ACTION**
)
v.                                    )    No.  05-10055-01, 02
)
DOUGLAS MUMMA and                     )
SHAUNA L. MUMMA,                      )
)
                    Defendants.       )
_____)

### MEMORANDUM AND ORDER

#### Background

On March 27, 2006, this case came on for a final sentencing hearing.   The parties appeared through counsel.   At an earlier sentencing hearing on January 26, the court sustained defendants' objections to the amounts of loss set forth in their respective presentence reports but took under advisement defendants' objections to information regarding fraud-related activity which took place after defendants were released on bond.   The court gave the parties until March 6, 2006 to file sentencing memoranda regarding the information. Defendants filed sentencing memoranda (Docs. 35 and 36) which principally address the now-advisory sentencing guidelines. The court notified counsel by letter dated March 15, 2006 (Doc. 37), that it would consider defendants' positions regarding the advisory sentencing guidelines, but that the court had a substantially different perspective on post-Booker sentencing.

In the meantime, the U.S. attorney requested the FBI case agent to conduct further investigation into the matter and by letter dated

February 7, 2006, the AUSA provided defense counsel with FBI 302 forms setting forth interviews conducted by Special Agent Randal A. Wolverton of individuals in Florida regarding defendants' conduct there while on bond.   Finally, defendants were provided with an affidavit of Chelsea Carty which covers in detail hers and her husband's interaction with defendants. Mrs. Carty's affidavit and its attachments are appended hereto as Exhibit A.

Special Agent Wolverton testified at the March 27 hearing.   He is a certified public accountant who specializes in while-collar crime cases.   He has testified many times and the court finds him to be completely credible.   In addition to his testimony, the court has considered Special Agent Wolverton's FBI 302 interview report of interview with Mrs. Carty (Exhibit B) because he testified and was available for cross-examination. Finally, in reaching its decision, the court has considered Mrs. Carty's affidavit. Both defendants were given the opportunity to testify and both declined to do so.

### Applicable Law

The law pertaining to sentencing post-Booker is not completely settled.   A very recent Tenth Circuit decision is United States v. Galarza-Payan, _____ F.3d _____, 2006 WL 689447 (10th Cir., March 20, 2006).   The court stated the following regarding the district court's obligation in fixing sentences:

> Even in the post-Booker legal landscape, we can expect judges to employ the familiar terminology of the Guidelines: The "now-advisory Guidelines are also a factor to be considered in imposing a sentence, which means that district courts 'must consult those Guidelines and take them into account when sentencing.'" [United States v. Kristl, 437 F.3d 1050, 1053 (10th Cir. 2006)](quoting Booker, 543 U.S. at 264, 125 S.Ct. 738). Furthermore, "[a]lthough district courts post-Booker have

discretion to assign sentences outside of the Guidelines-authorized range, they should also continue to apply the Guidelines departure provisions in appropriate cases." <u>United States v. Sierra-Castillo</u>, 405 F.3d 932, 936 n.2 (10th Cir. 2005). "[T]he sentencing court is not required to consider individually each factor listed in § 3553(a) before issuing a sentence," and we will "not demand that the district court recite any magic words to show us that it fulfilled its responsibility to be mindful of the factors that Congress has instructed it to consider." <u>United States v. Contreras-Martinez</u>, 409 F.3d 1236, 1242 (10th Cir. 2005) (internal quotations and citations omitted).

The Court of Appeals also has ruled that a sentence which falls within a properly-calculated advisory guideline range is presumptively reasonable after <u>Booker</u>, but that either defendant or the government may rebut a presumption by demonstrating that the sentence is unreasonable when viewed against the other factors set forth in 18 U.S.C. § 3553(a). <u>United States v. Kristl</u>, 437 F.3d 1050, 1053 (10th Cir. 2006). The court admits to some uncertainty regarding whether it is still required to rigidly adhere to the pre-<u>Booker</u> four part guideline departure ritual. <u>See</u> <u>United States v. Maese</u>, 146 Fed. Appx. 276 (10th Cir. 2005). But in the absence of specific direction from the Tenth Circuit, the court concludes that strict "guideline-hitching" is not, or at least no longer should be, required in view of <u>Booker</u>. Accordingly, the court has elected to follow what it believes to be current Tenth Circuit requirements: (1) consideration of the advisory guidelines and (2) application of the statutory factors under 18 U.S.C. § 3553. Obviously, the court has also considered and applied the authority set forth in its March 15 letter, none of which has been disputed.

<u>Motion to Enforce Plea Agreement</u>

Prior to sentencing, defendants filed a joint motion to enforce

-3-

their plea agreements.  The gist of the motion is that by asking Special Agent Wolverton to do further investigation and by presenting his testimony, the government breached its agreements not to seek an upward departure and to recommend sentences at the low end of the applicable advisory guidelines.  The court rejected this argument.

Defendants' plea agreements state, in pertinent part:

The defendant understands the United States will provide to the court and the United States Probation Office all information it deems relevant to determining the appropriate sentence in this case.  This may include information concerning the background, character and conduct of the defendant including the entirety of the defendant's criminal activities.  The defendant understands these disclosures are not limited to the count to which the defendant has plead guilty.  The United States may respond to comments made or positions taken by the defendant or defendant's counsel and to correct any misstatements or inaccuracies.

It was, and is, the court's view that the government did not breach the plea agreement but rather did exactly what defendants agreed it could do.  Ultimately, the AUSA swallowed hard and lived up to the government's side of the plea agreements.  However, the plea agreements clearly state, and the court covered this with defendants at the time of their pleas, that the court is not bound by terms of a plea agreement.

### Advisory Guideline Consideration - Relevant Conduct

Both defendants argue that their dealings with Mr. and Mrs. Carty do not constitute relevant conduct within the meaning of advisory U.S.S.G. § 1B1.3.  In addition, Shauna Mumma argues that the court cannot consider the conduct in Florida because it is unproven and therefore to do so would violate her due process rights.  The court rejects defendants' positions, essentially for the reasons set

-4-

out in considerable detail in its March 15 letter (Doc. 37). The fact that defendants' conduct while on bond may not amount to relevant conduct does not prevent its consideration, even under the advisory guidelines. The court now turns to consideration of the 18 U.S.C. § 3553 factors.

## 18 U.S.C. § 3553

Both defendants entered pleas of guilty to bankruptcy fraud in violation of 18 U.S.C. § 152(3). The maximum penalty is five years imprisonment. At the time of his plea, Douglas Mumma admitted to the following facts:

> On or about November 26, 2003, the defendant and his wife, Shauna L. Mumma, filed a Chapter 13 bankruptcy in the United States Bankruptcy Court for the District of Kansas, case number 03-25050. In the petition filed and signed by the defendant and Shauna L. Mumma, defendant Douglas E. Mumma, represented that he and his wife did not have any bank accounts.

> Defendant Douglas E. Mumma admits that in preparing and filing his Chapter 13 bankruptcy petition, case number 03-25050, he intentionally failed to disclose the existence of a Bank of the Prairie joint checking account in the name of Douglas and Shauna Mumma, account 5004314 and that the bankruptcy petition was filed under penalty of perjury.

Defendants' purpose in filing their bankruptcy petition was to discharge over $330,000 in unsecured debt. Ultimately, defendants voluntarily withdrew their bankruptcy petition and no loss was incurred. It was for this reason that the court sustained defendants' objections regarding loss.

Shauna Mumma also plead guilty to making a false statement to a financial institution in violation of 18 U.S.C. § 1014. The maximum penalty is 30 years. Shauna Mumma admitted to the following acts:

> The Bank of the Prairie was and is located at 18675 West

-5-

151st Street in Olathe, Kansas. At all material times to these activities, the Bank of the Prairie was a financial institution whose deposits were insured by the Federal Deposit Insurance Corporation (FDIC).

Beginning as early as October 21, 2002, and continuing through November 15, 2002, the defendant, Shauna L. Mumma, and her husband, Douglas E. Mumma, provided several financial documents to the Bank of the Prairie in support of their requests for a business line of credit.

Specifically, the defendant Shauna L. Mumma provided the bank with a document titled "Individual Financial Statement-Confidential" which represented that her assigned social security number ended with the numbers "4237."

At the bottom of this financial statement is a paragraph that reads:

The following is furnished to you for the purpose of procuring credit from time to time. This individual financial statement is a true and accurate statement of my financial condition. By signing below, authorization is hereby given to the Bank to verify in any manner it deems appropriate any and all items indicated on this application. Authorization is also expressly given for the Bank to inquire as to my/our creditworthiness through available sources. False statements may be subject to prosecution under Title 18 of the U.S. Code.

This document was signed by defendant Shauna L. Mumma and dated October 21, 2002.

The defendant Shauna L. Mumma also provided the Bank of the Prairie a document titled "U.S. Department of Treasury Internal Revenue Service Application for Employer Identification Number." This document represented that defendant Shauna L. Mumma's assigned social security number ended with the numbers "4237." This document was signed by defendant Shauna L. Mumma and dated November 13, 2002.

On or about November 26, 2003, the defendant and her husband, Douglas E. Mumma, filed a Chapter 13 bankruptcy in United States Bankruptcy Court for the District of Kansas, case number 03-25050. In the petition filed and signed by the defendant and Douglas E. Mumma, defendant Shauna L. Mumma represented that her assigned social security number ended with the numbers "9545." In addition the petition represented that the defendant did

-6-

not have any bank accounts or bank loans.

Defendant Shauna L. Mumma admits that the social security number assigned to her by the Commissioner of Social Security ends with the numbers "9545." The defendant further admits that she used a social security number that she was not authorized by the Commissioner of Social Security to use when conducting business with the Bank of the Prairie on or about October 21, 2002, and continuing through November 15, 2002. The defendant intentionally used another person's social security number in order to deceive and influence the decision of the Bank of the Prairie in granting the defendant's loan application.

Defendant Shauna L. Mumma also admits that in preparing and filing her Chapter 13 bankruptcy petition, case number 03-25050, she intentionally failed to disclose the existence of a bank account she and Douglas E. Mumma had Account #5004314 with the Bank of the Prairie, and that the bankruptcy petition was filed under penalty of perjury.

Since 1989, Douglas Mumma has filed five bankruptcies. Shauna Mumma has filed four bankruptcies, two with Douglas and two individually. Thus, both defendants either were, or should have been, aware of the importance of filing an accurate bankruptcy statement of assets and liabilities. Their failure to do so demonstrates their intent to deceive, which is an element of the offense. What they did was not an innocent mistake.

Defendants' conduct is serious because it goes to the heart of the purpose of bankruptcy: the discharge of debtors who legitimately are entitled to relief from debt. The law expects and relies upon debtors seeking bankruptcy relief to be honest when they seek the protection and relief accorded them by the bankruptcy laws. Bankruptcy fraud is a serious offense and a person who commits bankruptcy fraud demonstrates a lack of respect for a law which is designed to protect and benefit society. Thus, a person who commits bankruptcy fraud must anticipate a sentence which reflects the

seriousness of his or her conduct.  Moreover, the sentence must be sufficiently harsh so as to deter a defendant from similar conduct in the future.   While the court does not know the circumstances of defendants' prior bankruptcies, their conduct in this case certainly raises the inference that they may have committed bankruptcy fraud in one or more of the prior bankruptcies which was not detected. Therefore, the sentences in this case must be sufficient to impress upon defendants the seriousness of their conduct so as to deter them from similar conduct in the future and to protect the public -which includes more than just their creditors- from the consequences of bankruptcy fraud.   There is no evidence that defendants need any educational or vocational training, medical care or other correctional treatment.

Turning to Shauna Mumma, her illegal conduct also includes making a false statement to a financial institution, a much more serious offense because it has the potential to cause grave consequences to a financial institution.  While no such consequences were suffered in this case, that does little to lessen the seriousness of Shauana Mumma's intentional, deceitful conduct.  Finally, Shauna Mumma has a long and unchallenged history of financial-related crimes (Exhibit C).  It is readily apparent that she has learned nothing from her repeated contact with the judicial system, which enhances the need to fashion a sentence in this case which emphasizes deterrence and protection of the public.

There is one other aspect of sentencing which bears upon the types of sentences available.  When defendants were charged in this case, they were released on bond and allowed to return to Florida

-8-

under conditions which precluded conduct which would give rise to a
criminal prosecution. In terms of Douglas Mumma's conduct in Florida,
while it appears that he did not have as much contact with Mr. and
Mrs. Carty as did his wife, he was nevertheless involved in efforts
to deceive the Cartys and he benefitted from his and his wife's
deceitful conduct. Douglas Mumma's counsel has attempted to make much
of the fact that he has not been charged in Florida, but that argument
carries little weight.  The case law set forth in the court's March
15 letter clearly indicates that the court may consider uncharged
misconduct in fixing a sentence.  Given the unchallenged information
before the court, there is no doubt that both defendants were involved
in fraudulent activities while, at the same time, were receiving the
benefit of not being detained in connection with this case.  Had they
been detained, the problems suffered by the Cartys would not have
happened.  This, along with the other factors just mentioned, further
justifies a sentence in excess of that called for by the advisory
guidelines.

### Sentence Rationale

Under the advisory guidelines, Douglas Mumma's guideline range
is 1-7 months.  Shauna Mumma's guideline range is 4-10 months.  Both
guideline ranges reflect credit for acceptance of responsibility.
These sentences are not sufficient to meet the statutory factors of
18 U.S.C. § 3553.  Indeed, the court wonders how in the world the
Sentencing Commission could conclude that a statutory sentence
aggregating to 35 years imprisonment reasonably could be satisfied by
an advisory guideline sentence of 4-10 months, even if the defendant
did not commit fraudulent activities while released on bond.  While

-9-

the court is obligated to follow Tenth Circuit law, it is at a complete loss to understand how an advisory guideline sentence of 4-10 months can be considered "presumptively reasonable" when the statutory maximum sentence is 35 years; in other words, more than 35 times greater than the advisory guideline sentence.

The court has considered Douglas Mumma's tearful statements and Shauna Mumma's letter.  The emotion of the moment aside, it appears to the court that whatever regret or remorse defendants have for their conduct is mainly that they were caught and are now facing punishment. Given their past conduct, as well as their conduct in this case, the court doubts the sincerity of their statements that they have learned their lessons.  The court rejects the suggestion that either defendant should receive the benefit of a sentence that does not include substantial prison time.  Accordingly, the court sentences Douglas Mumma to serve a term of __24__ months imprisonment and Shauna Mumma to serve a term of __48__ months imprisonment.

IT IS SO ORDERED.

Dated this __31st__ day of March 2006, at Wichita, Kansas.

Monti L. Belot
UNITED STATES DISTRICT JUDGE

-10-